# United States District Court
# Eastern District of Wisconsin

HUE THANG LIEN

(Full Name of Plaintiff or Plaintiffs)

vs

GENERAL ELECTRIC HEALTH CARE
Todd Tesch
Philip Mc Kinley
Fred Kingsley

(Full Name of Defendant or Defendants)

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2010 JUN -4 P 2:20
JON W. SANFILIPPO
CLERK

No. 10-C-472
(Supplied by Clerk)

## COMPLAINT

I. PREVIOUS LAWSUITS

A. Have you begun other lawsuits in state or federal court relating to the same occurrence involved in this action?
   ☐ YES   ☒ NO

B. Have you begun other lawsuits in state or federal court?
   ☐ YES   ☒ NO

C. If your answer to A or B was YES, provide the requested information below. If there is more than one lawsuit, describe each additional one on a separate sheet of paper, using the same outline.

   1. Parties to the previous lawsuit

   Plaintiff(s) _____

   _____

   Defendant(s) _____

   _____

   2. Court in which lawsuit brought (if federal court, name district: if state court, name the county) _____

3. Docket number _____

4. Current status (for example: Was the case dismissed? Was it appealed? Is it still pending)? _NA_

5. Approximate date of filing lawsuit _____

6. Approximate date of disposition _____

## II. PARTIES

A. Your name (PLAINTIFF) _HUE THANG LIEN_

B. Your Address _13295 W. FOXWOOD DR. NEW BERLIN, WI. 53151_

(If there is more than one plaintiff, use the margin for extra space if you need it. List the address only if it is different from the address listed above).

C. DEFENDANT (name) _GENERAL ELECTRIC HEALTH CARE_
_Todd Tesch, Philip McKinley, Fred Kingsley._

D. Defendants address _3000 N. GRANDVIEW Blvd. WAUKESHA, WI. 53188_

E. Additional DEFENDANTS (names and addresses) _Todd Tesch, Philip McKinley, Fred Kingsley_

## III. STATEMENT OF CLAIM (follow instructions carefully)

State briefly as possible the *essential facts* of your case. Tell what each defendant did to you that caused you to file this suit against them. If you are complaining about more than one wrong, use a separate *numbered* paragraph for each wrong, and describe each wrong in that paragraph and only that paragraph. State only the facts. Do not give any legal theories or arguments, do not cite any cases or statutes. Do not feel you have to use all the space. USE NO MORE THAN THE SPACE PROVIDED. THE COURT STRONGLY DISAPPROVES OF STATING CLAIMS OUTSIDE THE SPACE PROVIDED.

Begin statement of claim: _SEE ATTACHMENT Labled "A1"_

## SUMMARY OF FACTS

1. Hue Thang Lien is a 54-year old Vietnamese male.

2. On or around June 20, 2009, Mr. Lien filed a discrimination claim based on age, national origin, retaliation, whistleblower and disability with his employer, GE Medical Systems ("GE").

3. Mr. Lien worked for GE for 26 years. He had one year of employment remaining at GE before he was eligible for Special retirement and Medical benefits.

4. During Mr. Lien's employment with GE, he held the Senior Technician in CT Detector Operations position. He performed Assembly Detector Testing and held the lead technician position for 13 years. At the time of his termination, he earned $80,000 per year or $1,538.45 per week.

5. For 25 of his 26 years with GE, GE rated Mr. Lien's performance "Outstanding," "Excellent," and "Highly Valued." In December 2008, GE abandoned its previous EMS rating tool in favor of a new rating tool. GE had a training class for first shift technicians but there was no training class for second shift technicians. Because of the sudden change in rating tools, it was impossible to evaluate Mr. Lien's growth values for 2008 (made with the old EMS rating tool) using the new rating tool. Nevertheless, Mr. Lien tried to use the new rating tool and compiled a table of his 2008 performance according to the new rating scale and formula. He sent that table to his supervisor, Todd Tesch and asked to meet with him informally on March 4, 2009.

6. On March 4, 2009, Mr. Tesch informed Mr. Lien he could not meet on March 4th, but would make the March 5, 2009 for an informal meeting with the formal meeting scheduled for the following week. Mr. Lien informed Mr. Tesch he could attend the informal meeting on Thursday, March 5th, but that he was leaving for Vietnam on March 9 so the formal meeting would have to be rescheduled (Mr. Tesch never had an formal meeting to discuss my 2008 performance after I returned from Vietnam. Mr. Tesch just included me in the layoff and violated the GE policy). Mr. Lien was going to Vietnam for five weeks to visit his aging, frail parents.

7. Mr. Tesch and Mr. Lien met informally for two hours on March 5. During the meeting Mr. Tesch told Mr. Lien he knew him better in the past two hours

than he had in the past two years. Mr. Tesch also admitted to Mr. Lien that he did not know Mr. Lien accomplished so much work in 2008. **_Upon information and belief, Mr. Tesch never sought input from individuals on second shift or the leadership team that worked directly with Mr. Lien in order to accurately assess Mr. Lien's supervisory, leadership, and communication skills._** Mr. Tesch never had a formal meeting with Mr. Lien to discuss his final EMS evaluation. Instead, Mr. Tesch completed the evaluation in February 2009 (before the informal meeting). He wrote:

   a. Hue's performance assessment is Consistently Meets Expectations. His Growth Values Assessment is Development Needed; based on his performance and Growth Values assessment, Hue's overall assessment for 2008 is Development [1]Needed.

8. Based upon GE's non-exempt guide, written by Fred Kingsley, a manager cannot drop an employee's rating without documentation of the employee's deteriorating performance. Mr. Lien's 2007 appraisal was "Highly Valued." GE documented no performance problems or issued any performance improvement plans to Mr. Lien for 2008. Rating Mr. Lien "Development Needed" without previous documentation from 2008 is a violation of GE's policies, procedures, and guidelines.

9. GE rated Mr. Lien "Development Needed" because it was the only way GE could include Mr. Lien in its reduction-in-force in order to discriminatorily remove a 54-year old Vietnamese worker and replace him with a much younger white worker. As further proof, GE's "Development Needed" evaluation was a pretext for discrimination consider:
   a. No mid-year review
   b. No one-on-one goal setting
   c. Dropped one level on the appraisal process without documentation of the employee's deteriorating performance. - that is against GE policy and procedure
   d. No work plan provided
   e. No OMS which technicians need to write the EMS
   f. No training on how to write a good EMS
   g. No input from peers. Input came from third-shift technician with 1+ year with GE who previously lied about Mr. Lien. GE Technicians filed complaints against this man.

---

10. As further proof, Hue's evaluation rating was a pretext for discrimination, Mr. Tesch admitted he did not know Mr. Lien well enough to realize that Mr. Hue Lien accomplished a great deal of work in 2008. **How can the reviewer(Mr. Tesch) provided a valid, legitimate, non-discriminatory review when Mr. Tesch admitted he did not know Hue's work**(Hue's shift started at 3:30pm to midnight) and Mr. Tesch ended his work hour at around 2:30pm-3:30pm(Mr. McKinley, Mr. Tesch's manager, acknowledged to letting Mr. Tesch leave work early for pursuing his personal interest)

11. In addition, GE had promoted Hue for Excellent Growth knowledge for the past 25 years from 1983(4-slice CAT scanner) to the brand new 64-slice VCT-HD Scanner in 2008(I participated in this project leaded by Project Engineer). GE had nourished Hue these 26 years of services from Technician III to the Leadership role, the Senior technician in charge of 2nd technicians team. **How can Mr. Tesch terminate me for lack of Growth knowledge in 2008 when there was no personal Goal and Objective about Growth value in 2008?**

12. Moreover, Mr. Tesch had a motive to include Mr. Lien in the RIF because Mr. Lien refused to sell a failing imaging test of the Watson 16 to CT. Mr. Lien refused to sell this over Mr. Tesch's orders. He had the Senior Engineer stop it from shipping.

13. Mr. Lien's immediate manager and its HR manager, Clint Wallace, agreed Mr. Lien did not need a work plan. If Mr. Lien kept communication open, he would be fine (meaning he would not lose his job). When Mr. Lien asked GE about re-evaluating him after Mr. Tesch admitted he did not know Mr. Lien or his work, Mr. Tesch told Mr. Lien (and Mr. Wallace confirmed) Mr. Tesch could not change my rating because GE's system prevents a change in rating. Mr. Wallace also told Mr. Lien that Mr. Tesch should not have entered the data for Mr. Lien's review without a discussion with Mr. Lien. Mr. Wallace asked Mr. Lien wrote as much as comments in the appraisal before acknowledgement of the discussion.

14. GE's legitimate non-discriminatory reason for Mr. Lien's termination is that it will terminate a 26-year employee with stellar reviews because its software does not allow an EMS to be recalled and changed once it is submitted?

15. Before GE terminated Mr. Lien, it had already selected a younger, white, technician to fill his second shift spot. Since Mr. Lien started investigating his RIF, he found additional information about how GE treated older, non-white

workers during his layoffs compared to younger, white, workers. For example:
   a. A comparator individual, not in the protected categories, has a work plan using the same EMS appraisal. Yet, Mr. Lien was rejected for a work plan and laid off.
   b. Mr. Lien sent an e-mail to HR about a job posted in EA. HR's response was that these were jobs offered to reduction-in-force employees with a low COS. Mr. Lien did not qualify because he had a high COS and 26 years of service (older worker).
   c. GE gave younger workers good performance ratings. GE gave older workers poor performance ratings.
   d. Eighty percent of the second shift technicians were affected by the RIF including three technicians with high COS versus 0% of technicians on first shift with low COS. The low COS technicians are under 40 and white. The high COS technicians are in their 50s. Two technicians were also retired by GE. One was in his 50s and white. One was in his 60s and Vietnamese.
   e. Mr. Tesch asked Mr. Lien to "watch and report" on a third shift technician, Yves Mack (African American) regarding his work and attendance. Mr. Lien refused to do this. Mr. Tesch eventually selected Chuck Emery (white) to inform management of the work habits of other employees. Upon information and belief, Mr. Mack was included in the reduction in force.
   f. Chuck Emery enjoys preferential treatment including not being written up for smoking a detector (Mr. Lien was written up instead. However, Mr. Lien was not present in the bay when the incident occurred), extended offers to work Greenbelt/Six Sigma projects, and allowed to attend management meetings.
   g. Nick Braun (younger, white) works first shift. Mr. Braun was not bumped out of the department despite the fact, upon information and belief; Mr. Braun had only five (5) written log entries for all of 2008.
   h. Older Workers selected for the second reduction in force were Dave Oiler(Retired?), Bill Kresl(bumped), Eddie Byrd(bumped), Yves Mack(layoff) and Mr. Lien(layoff) – all over 40 years of age.

16. After 26 years of exemplary service, GE discriminatorily selected Mr. Lien for termination based upon his age, his national origin, and the fact he refused to send a defective product to a customer. GE violated its own policies and procedures when it selected Mr. Lien for termination.

17. In addition, near Year-end of 2007 and early of 2008, Mr. Lien developed foot pain. A lot of stand at work on the concrete floor with no mat, Mr. Lien requested special Ergo shoes to Mr. Tesch and EHS rep. Vicki numeral times. However the requests were ignored. On 3/17/2009, Mr. Lien went to the

doctor who diagnosed Mr. Lien as having Tarsal tunnel syndrome. This, later, is confirmed by EMG test on 6/19/2009.

18. Many coworkers and Mr. Lien informed Mr. Tesch to use battery-operated torque wrench to torque down detector modules because it takes an average of 800 revolutions per iteration per detector to loose and tighten the modules included helping other technicians. Mr. Tesch refused to implement because he said, "it cost $700 a piece". Mr. Tesch, instead, bought the group a pair of gloves/person. As a result, three technicians developed Carpal tunnel syndrome/arthritis, including Mr. Lien. This, later, is confirmed by Arthritis/Rheumatology doctor, 6/19/2009.

19. As a result of the injuries, I was selected to be lay off.

20. Mr. Lien also alleging that GE terminated my employment so that GE can avoid paying Mr. Lien's full retirement medical benefits (included Mr. Lien's wife and two minors/ young sons, 10 years old and 8 years old) which Mr. Lien would have been eligible for at age 55 (with 26 weeks of severance package, GE only bridges me a few months for Special Retirement. But GE discriminatory bridged a few month for the white worker who received a pink slip at age 54 and 29 years of service). The insurance Mr. Lien paid at work was $166/month vs COBRA $1800/month. (GE sent to Mr. Lien for the cost of COBRA)

## **MY ARGUMENT**

1. Hue Lien enjoyed 25 years of successful employment at GE. During those 25 years, he was promoted and enjoyed high performance ratings of "Outstanding," "Excellent, " and "Highly Valued" from his supervisors. In December 2008, GE implemented a new employee evaluation system. The second shift, (of which Mr. Lien was the supervisor) was not trained on how to properly present themselves, and their work performance, in the new rating system. First shift employees had a special training session on the new system including how to effectively present their 2008 performance using the new rating system.

2. The first shift employees supervised by Todd Tesch were all white and many of them under 40 years of age. All of the first shift employees survived both layoffs. The second shift employees supervised by Mr. Tesch had one white employee under 40 who was initially laid off but Mr. Tesch called HR to save

her from lay off. The remaining second shift employees supervised by Mr. Tesch were all over 40 years of age. One of those employees was Asian and two were African-American. These employee were bumped or laid off.

3. Mr. Tesch completed Mr. Lien's evaluation on or around February 10, 2009 but never spoke with Mr. Lien until his lay off June 19th, 2009. This is against GE policy. During their two-hour informal conversation, Mr. Tesch admitted he did not know Mr. Lien had accomplished so much in 2008. In fact, Mr. Tesch admitted he did not know Mr. Lien at all. Upon information and belief, Mr. Tesch never sought out comments about Mr. Lien's performance from those employees he supervised on second shift and never sought out Mr. Lien's comments on his own performance before he completed the evaluation in February 2009.

4. By the time Mr. Tesch agreed informally to meet with Mr. Lien, and Mr. Lien found out he was rated "Development Needed," GE told Mr. Lien it was "too late" to change his evaluation. GE policy dictates that if a manager is going to drop an employee one levels in an evaluation that they be counseled or have some type of performance plan/improvement plan in place. Mr. Lien was never counseled about his performance or placed on any performance evaluation plan. He had no warning he was "Development Needed." GE used then used Mr. Lien's "Development Needed" evaluation as a reason to include him in the layoff (as a "poor performer").

5. Mr. Lien asked about other positions within GE for which he was qualified and was told they were for people with less years of service (younger workers) and he was not eligible. In 2009, one year short of Mr. Lien being able to retire from GE, he suddenly became an employee who was a poor performer and out of a job. Of the 22 employees Todd Tesch supervised, Mr. Tesch kept 13 employees (12 white, 1 Asian) a few of them under the age of 40. Of the remaining 9 employees, all were over 40 (2 Asian, 2 African-American), and all were selected for layoff(Mr. Tesch acknowledged to Hue the initial affected layoff/bumped/moved list was these older workers over 40 years old and rated poor performance. This indicated '**a pattern and practice of age discrimination' by GE policy to get rid of the older workers**). Mr. Lien was the only Asian on the second shift. Upon information and belief, white employees now staff the second shift.

6. Under these set of facts, Mr. Lien can establish a *prima facie* case of discrimination. He is in a protected group, he was performing his job very well, he suffered an adverse employment action and a younger, white worker replaced him. Mr. Lien can also show GE's layoff disproportionately affected older, non-white workers and that his younger, white supervisor kept younger, white workers working for him.

7. GE's legitimate, non-discriminatory reason for including Mr. Lien in the layoff was poor job performance. This reason is not worthy of belief for two reasons. First, GE violated its own policies and procedures by dropping Mr. Lien one level in performance without informing him of his performance deficiencies or counseling suggesting the review was fabricated and given for the sole purpose of including Mr. Lien in the layoff. After all, how could GE justify including Mr. Lien in a layoff with 25 years of stellar reviews and no performance deficiencies? Second, the entire evaluation process was compromised. Mr. Tesch did the review before he spoke to Mr. Lien. He never consulted with anyone Mr. Lien directly supervised to find out if Mr. Lien was a good manager and/or good communicator. Instead, Mr. Tesch used a "snitch" on the third shift that did not work with Mr. Lien as his information source. Finally, Mr. Tesch never gave Mr. Lien any indication he was a poor performer. When Mr. Tesch did meet with Mr. Lien, he admitted he knew nothing about Mr. Lien or his 2008 work performance. By then it was "too late" for Mr. Lien because GE claimed it could not change his review. Clearly, Mr. Lien was set up, through a bad review, so he could be included in the layoff.

8. Mr. Tesch and his manager, McKinley, knew along I have Tarsal Tunnel Syndrome on both of my feet in early 2008 and I could not prolong standing on the concrete floor without the mat and the ESD Ergo-mated shoe. Mr. Tesch and his manager, McKinley, kept rejecting my request to have a pair of ESD Ergo-mated shoes ordered by my doctor. Mr. McKinley kept forcing me to whip my technicians to achieve the stretch goal without concerns the safety of my aggravating injury feet. Both of my feet progressively get painfully worse and numbed by the time I left workplace at midnight. Mr. Tesch and Mr. McKinley just included me in the layoff and said foolishly to me they did not know I have injury feet (attachment).

## IV. RELIEF YOU REQUEST

State exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes. DO NOT USE THIS SPACE TO STATE THE FACTS OF YOUR CLAIM. USE IT ONLY TO REQUEST REMEDIES FOR THE INJURIES YOU COMPLAIN ABOUT. Use only the space provided. The court strongly disapproves of requesting remedies outside the space provided.

1). Re-instatement, Re-inbursement for my lost wages since 6/19/2009 and I made $1577.81 per week.

2). Re-pay the attorney fee $3,500 while I appealed my case in GE Court.

3). Damage $1,5,000,000 (One and a half millions dollars) for emotional & reputation & mental stress.

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this 3rd day of June, 2010.

_____
(Signature of Plaintiff(s))

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[X] EEOC | 443-2010-00442 |

Wisconsin Equal Rights Division                                   and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>Mr. Hue T. Lien | Home Phone (Incl. Area Code)<br>5723 | Date of Birth<br>55 |
|---|---|---|

Street Address                                 City, State and ZIP Code
13295 W. Fox Wood Dr., New Berlin, WI 53151

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>GENERAL ELECTRIC HEALTHCARE | No. Employees, Members<br>500 or More | Phone No. (Include Area Code)<br>3212 |
|---|---|---|

Street Address                                 City, State and ZIP Code
3000 N Grandview Blvd., Waukesha, WI 53188

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [X] AGE  [X] DISABILITY  [ ] OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 03-01-2008   Latest: 05-19-2009
[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I. I began my employment with the Respondent as an Electrical Technician on March 7, 1983. My last position was Senior Lead Technician. In January 2008, I participated in a claim of racial harassment against the Respondent. In March 2008 and June 2009, I was denied a request for an ergonomic shoe, while a White employee was granted this request. On February 10, 2009, I was categorized as 'needing development'. On May 19, 2009, I was informed I would be permanently laid off, while younger White employees were retained.

II. I believe the Respondent discriminated against me, on the basis of my race (Asian), and in retaliation for opposing a discriminatory practice, when I was denied equal terms and conditions of employment and laid off, in violation of Title VII of the Civil Rights Act, as amended, including §704(a). I also believe the Respondent discriminated against me, on the basis of disability, when I was denied a reasonable accommodation, in violation of the Americans with Disabilities Act of 1990.

I further believe the Respondent discriminated against me on the basis of my age (d.o.b. 06/06/1955), when I was laid off, in violation of the Age Discrimination in Employment Act of 1967, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*
12/21/09

Date        Charging Party Signature

Case 2:10-cv-00472-RTR   Filed 06/04/10   Page 12 of 13   Document 1

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Hue T. Lien<br>13295 W. Fox Wood Dr.<br>New Berlin, WI 53151 | From: | Milwaukee Area Office<br>310 West Wisconsin Ave<br>Suite 800<br>Milwaukee, WI 53203 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 443-2010-00442 | Aurora Cheong-Ojeda,<br>Enforcement Supervisor | (414) 297-1111 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

John P. Rowe,
Director

08 APR 2010

*(Date Mailed)*

Enclosures(s)

cc: Joe Wilson
Quarles & Brady LLP
411 East Wisconsin Avenue
Milwaukee, WI 53202